UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WILLIAM M.,

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:21-cv-00898-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security. That final decision, issued by the Appeals Council on June 10, 2021, denied Plaintiff's application for supplemental security income. Plaintiff has now moved for judgment on the pleadings (Doc. 5) and the Commissioner has filed a similar motion (Doc. 6). For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the Clerk to enter judgment in favor of the Commissioner.

### I.  BACKGROUND

    Plaintiff filed his application for benefits on July 20, 2018, alleging that he became disabled on May 1, 2012. After initial administrative denials of that claim, a hearing was held before an Administrative Law Judge on April 29, 2020. Plaintiff and a vocational expert, Mary Vasishth, testified at the hearing.

    The Administrative Law Judge issued an unfavorable decision on November 27, 2020. She first found that Plaintiff had not engaged in substantial gainful activity since his application date. Next, the ALJ concluded that Plaintiff suffered from severe impairments including degenerative disc disease, status post hernia repair, and status post cerebrovascular accident requiring a craniotomy in 2014. However, the ALJ determined that these impairments, taken singly or in combination, did not meet the criteria for disability under the Listing of Impairments.

    Moving forward with the sequential evaluation process, the ALJ then concluded that Plaintiff had the ability to perform medium work. Additionally, she found that Plaintiff could climb ramps and stairs occasionally but should never climb ladders, ropes, or scaffolds, and that he could occasionally balance and stoop but should avoid unprotected heights and hazardous machinery. The ALJ further concluded that Plaintiff had no past relevant work. However, relying on the vocational expert's testimony, the ALJ determined that, with the limitations

described above, Plaintiff could perform medium unskilled jobs such as dining room attendant and laundry worker.  She also found that these jobs existed in significant numbers in the national economy.  As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in his motion for judgment on the pleadings, raises this claim of error: "The ALJ failed to obtain a consulting physical examination, an error that is harmful because of Plaintiff's advanced age category at the time of the application and subsequent change of age category to closely approaching retirement age."  *See* Plaintiff's memorandum, Doc. 5-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 59 years old at the time of the administrative hearing, first testified that he had an eleventh grade education and had quit school to go work for his father.  At the time of the hearing, he was staying with a friend in a single-level residence.  He did not drive because his license had expired.  He last worked in 2019 helping a friend who had a store.  His duties included baking rolls and making subs and pizzas, and he worked six hours a day, six days a week.  He had also worked for a window cleaning company first owned by his father and then by his brother, and had done general contracting work as well, but not since 2013.  He had done no heavy lifting since he had hernia surgery.

In a typical day, Plaintiff watched television, did puzzles, and rode his bicycle or walked, weather permitting.  He was able to shop for groceries.  Prior to moving in with a friend, he lived in a mission and spent most of his day working in the kitchen.  Plaintiff said that he would get dizzy if he stood up too fast but the dizziness would go away quickly if he sat down.  He had been told by his doctors not to lift over five pounds, and he had some balance issues after his craniotomy.  Additionally, he was unable to work with his hands above his head.

The vocational expert, Ms. Vasishth, was asked questions about a hypothetical person with Plaintiff's vocational profile who could work at the medium exertional level and who could occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds.  Additionally, the person could occasionally balance and stoop but had to avoid unprotected heights and hazardous machinery.  In response, she said that such a person could work as a kitchen helper, dining room attendant, and laundry worker.  To remain employed, such a person could not be off task more than ten percent of the workday or absent more than one day per month.

### B.  Treatment Records

The following is a summary of the relevant treatment records.  On August 15, 2017, Plaintiff underwent a lapraroscopic bilateral inguinal hernia repair.  He had had the right inguinal hernia tear for twenty years before that, and the left one for one year.  An examination done the month prior to the surgery was essentially normal except for the hernias.  Other examination

notes were similar.  A CT scan of the cervical spine done in 2017 showed degenerative changes at C5-C7 associated with posterior and uncovertebral joint disc osteophyte complex and facet arthrosis with resultant bilateral foraminal stenosis and central canal stenosis.  In 2018 and 2019, Plaintiff was seen multiple times for complaints of headaches or dizziness, and it was stated that he was status post craniotomy.  Those records also show that he did not report any back pain.  The records of the craniotomy do not appear to have been submitted as exhibits, and there do not appear to be any records of treatment for back pain.  He did undergo a pulmonary function test on October 18, 2018, which was normal.

### C.  Opinion Evidence

Dr. Ransom, a psychologist, performed a consultative psychiatric examination on October 18, 2018.  Plaintiff did not report any history of treatment for mental impairments and denied any mental health symptoms.  He did say he had been using alcohol and marijuana.  Dr. Ransom noted that his attention and concentration were intact, as were his memory and cognitive functioning.  She concluded that Plaintiff did not have a diagnosable psychiatric condition.  (Tr. 389-92).

Dr. Ehlert, a state agency physician, reviewed the records and, in an opinion dated November 8, 2018, concluded that Plaintiff could do medium work but was limited to occasional climbing of stairs and ramps, no climbing of ropes, ladders, and scaffolds, and avoidance of unprotected heights and machinery.  Dr. Ehlert also found some environmental restrictions.  He noted the findings of the cervical CT scan as the reason he limited Plaintiff to medium work. (Tr. 75-78).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S.

150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence
standard means once an ALJ finds facts, we can reject those facts "only if a
reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29
F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted);
*see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same
standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV.  DISCUSSION

As noted above, Plaintiff raises only a single claim of error here.  Plaintiff notes that although he did not claim a psychologically-based disability, a consultative psychiatric examination was nonetheless ordered, but a physical examination was not.  He points out that the finding that he could work at the medium exertional level was crucial to determining that he was not disabled, and suggests that various conditions which are documented in the record - including his prior traumatic brain injury and his hernia surgery - might limit him to light work, mandating a finding of disability.  The Commissioner responds that based on the entire record, including the relatively normal physical examinations, Plaintiff's description of his abilities and activities, and Dr. Ehlert's opinion, the ALJ had a substantial basis for his finding that Plaintiff was capable of medium work activity.

The ALJ analyzed the issue this way.  She first found that the medical evidence did "not corroborate the level of incapacity alleged by the claimant" because the records showed stable examination findings and only occasional reports of symptoms, and because his range of daily activities was not consistent with his description of his limitations.  (Tr. 21).  She then reviewed the medical records, noting that the hernia repair done in 2017 proceeded without complications and that the treatment notes from 2018 and 2019 indicated that Plaintiff was seen only for a variety of acute ailments.  The ALJ also summarized the results of the consultative psychiatric examination and the pulmonary function test.  Next, she concluded that the examinations documented in the record "consistently showed no neurological deficits, normal gait, intact mentation and no overt serious symptoms."  (Tr. 24).  Finally, she found Dr. Ehlert's opinion "almost fully persuasive," determining that the only portion of it not supported by the record was his finding that Plaintiff had environmental limitations.  Otherwise, it was consistent with "the generally benign clinical findings (unremarkable medical evidence of record) and the conservative treatment."  *Id*.  As noted, Dr. Ehlert found, from a physical standpoint, that Plaintiff could perform a relatively full range of medium work.

This Court has explained the applicable law this way:

The ALJ has discretion on a case-by-case basis to determine whether a
consultative examination is needed, and is only required to order such an
examination where the examination is necessary to resolve a conflict or ambiguity

in the record. 20 C.F.R. § 404.1519a(b)(4); *see Simon v. Colvin*, No. 6:12–CV–6381 MAT, 2013 WL 4094612, at *6–7 (W.D.N.Y. Aug. 13, 2013) (finding no psychiatric consultative evaluation needed where substantial evidence in the record to support ALJ's conclusion); *Battaglia v. Astrue*, No. 11 Civ. 02045, 2012 WL 1940851, at *10 (E.D.N.Y. May 29, 2012) (determining no psychiatric consultative examination necessary where claimant voluntarily discontinued psychiatric treatment and subsequent treatment notes indicated claimant appeared well). "An ALJ is not obligated to order a consultative examination if the facts do not warrant or suggest the need for such an examination." *Brown v. Astrue*, No. 11–CV–6329T, 2012 WL 2953213, at *7 (W.D.N.Y. July 19, 2012). On the other hand, it is a reversible error for the ALJ to fail to obtain a consultative examination if such an evaluation is necessary for the ALJ to make an informed decision. *Falcon v. Apfel*, 88 F.Supp.2d 87, 90–91 (W.D.N.Y.2000).

*Phelps v. Colvin*, 20 F. Supp. 3d 392, 401–02 (W.D.N.Y. 2014)

Here, it would not appear that there are any additional medical records which would shed more light on Plaintiff's condition. Thus, there are no apparent gaps in the record or any ambiguities which need further explanation. Dr. Ehlert clearly found the record to be sufficient to express an opinion as to Plaintiff's functional capacity. The ALJ's observations concerning the essentially normal examination findings and relatively full range of daily activities are an accurate description of the record and provide further support for her findings. And, as this Court has also said, "when supported by evidence in the record, the opinion of a nonexamining physician can also constitute substantial evidence." *Rose o/b/o X.G.T.A. v. Berryhill*, 2019 WL 2453352, at *3 (S.D.N.Y. Feb. 4, 2019), *report and recommendation adopted*, 2019 WL 2498279 (S.D.N.Y. June 17, 2019). Under all of the circumstances, and looking at the specifics of this particular record, the Court finds that the ALJ did not err in failing to request an additional consultative examination. As a result, Plaintiff's motion for judgment on the pleadings must be denied.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 5), **GRANTS** the Commissioner's motion (Doc. 6), and **DIRECTS** the Clerk to enter judgment in favor of the Commissioner.

/s/ Terence P. Kemp
**United States Magistrate Judge**